PROCTOR et ux. *v.* BROOKHART et al.

[No. 170, October Term, 1949.]

*Decided April 14, 1950.*

202

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Harry Troth Gross* and *J. Cookman Boyd, Jr.*, with whom were *Stewart O. Day* and *Tydings, Sauerwein, Benson & Boyd* on the brief, for the appellants.

*Edward D. Higinbothom* and *A. Freeborn Brown, III*, with whom were *Jacobs & Cameron* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

This case presents for review the correctness of the decree filed by the Chancellor below, in which he sustained a demurrer to the bill of complaint, and dismissed the bill.

William W. Proctor and Dorothy P. Proctor, his wife, reside at Cardiff, Harford County, Maryland, and are taxpayers in that County, and of the State of Maryland. They sued George A. Brookhart, W. Leroy McMaster,

James Johnson, comprising the Board of Election Supervisors of Harford County, Hugh M. Laird, W. Lee Linkous, Milton R. Walker, comprising the County Commissioners of Harford County, and Street Bowman, Treasurer of Harford County. The Shoup Voting Machine Corporation intervened as a defendant.

This case grows out of a contract under which the Shoup Voting Machine Corporation agreed to sell to the Supervisors of Elections of Harford County and to the County Commissioners of Harford County voting machines. The Board of Supervisors of Elections invited bids for certain types of voting machines to be constructed in accordance with Section 87 of Article 33 of the 1947 Supplement to the Code. By the Acts of 1949, Chapter 734, the Board of Supervisors of Elections, with the approval of the Board of County Commissioners of Harford County, were authorized to purchase voting machines for use in general, primary and special elections in Harford County. The Shoup Voting Machine Corporation and the Automatic Voting Machine Corporation submitted bids. The contract was awarded to the Shoup Voting Machine Corporation. The bill in this case charges that the Board of Supervisors of Elections and the Board of County Commissioners are without power to enter into the contract with the Shoup Voting Machine Corporation as they did in their contract dated October 4, 1949, because the machines contracted for will not be built in accordance with the provisions of Section 87, *supra,* and that therefore the contract is *ultra vires,* null and void.

The bill in this case does not charge that the Supervisors or Commissioners were actuated by fraud in entering into this contract with the Shoup Voting Machine Corporation for the voting machines, and at the argument, appellants disclaimed that there was any fraud in the matter whatsoever, but admitted the contract was entered into in good faith and for the purpose of carrying out their duty in accordance with the Act referred to. The bill is quite long and makes many charges which

were not mentioned in the brief or in the argument by the appellants. The bill charges that the plans and specifications of the Shoup Voting Machine Corporation are not in accordance with subparagraphs (e), (r), (l), (j) and (h) of Section 87, *supra*. In fact, the bill charges generally that the Shoup machine does everything that it should not do and fails to do what it should do as required by Section 87, *supra*. Therefore there is no legal health in this machine.

One specific charge is "that the said Shoup voting machine does not 'preclude each voter from voting for more persons for any office than he is entitled to vote for, and from voting for any candidate for the same office or upon any question more than once', as required by paragraph (e) of said Section 87 of Article 33, Annotated Code of Maryland, (1947 Supplement) ; * * * ; but that, on the contrary, it is possible for a voter, with the aid of a sharp pointed instrument, to manipulate the counters of said machine so as to add or subtract votes from any particular candidate or ballot question without the same being detected, and without damaging the counter or counting mechanism." On this paragraph of the bill counsel for appellants relied chiefly in their argument before this court. Counsel for appellees contend that this criticism of the Shoup machine is too general and is immaterial. They say that no machine can be built that cannot be put out of use; in fact it is said that it could be destroyed by a large and heavy instrument. People bent on cheating at elections do not operate with heavy instruments that make loud sounding noises which would make certain their discovery. They operate clandestinely and with great stealth, because they know if they are heard their fraud will be discovered. The picture of the machine described by the paragraph quoted is one so constructed that it would make the old time election repeater blush. It describes a voting machine where an ordinary voter could use a sharp pointed instrument to change the total of votes cast at will; that the vote for a candidate could be added to or subtracted from, as

desired, without noise and without consuming such time as would raise suspicion on the part of any of the election officials, and leave the machine in effective operation after the fraudulent voter had accomplished his purpose. It is one thing to say that you can manipulate a voting machine with a sharp pointed instrument, such as a penknife, and another thing to say that one could manipulate it with a sledge hammer. The use of the first instrument might well accomplish the fraudulent purpose; the use of a sledge hammer on a voting machine during an election would never be attempted. This matter is well pleaded and it is therefore admitted to be true by the demurrer. A contract for voting machines that can be operated in the fraudulent manner described is illegal, *ultra vires,* and thoroughly void. *Jackson v. Norris,* 173 Md. 579, 195 A. 576.

The demurrer should have been overruled.

Of course this matter is before us on demurrer and not on proof, and what we say here is to have no effect on questions of fact in the trial of the case, or on particular questions as to construction of the statute—and construction of voting machines—not here discussed but left open.

Under the Act of 1949, Chapter 734, the Board of Supervisors of Elections of Harford County, with the approval of the Board of County Commissioners of Harford County, have wide powers concerning the purchase of voting machines to be used in all elections, general, primary and special, in that County, and if their actions in this regard are fair and honest, and not tainted by fraud, or arbitrary or capricious, they have full power to purchase voting machines such as are permitted under that Act.

We think that the bill in this case should be answered and the plaintiff put to proof.

> *Order sustaining demurrer to bill reversed, with costs; case remanded for proceedings in accordance with this opinion.*